ZACH MASON, CA Bar # 329643
Email: zach.mason@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Telephone: (212) 328-7013
Facsimile: (202) 435-7329

Attorney for Plaintiff
Bureau of Consumer Financial Protection

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>Plaintiff,<br><br>v.<br><br>Encore Capital Group, Inc.; Midland Funding, LLC; Midland Credit Management, Inc.; and Asset Acceptance Capital Corp.,<br><br>Defendants. | Case No.: **'20 CV1750 GPC KSC**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** |

The Bureau of Consumer Financial Protection brings this action against Encore Capital Group, Inc.; Midland Funding, LLC; Midland Credit Management, Inc.; and Asset Acceptance Capital Corp., under the Consumer Financial Protection Act of 2010

(CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565; and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.

## INTRODUCTION

1. This is the second enforcement action that the Bureau has brought against Defendants. In the first action, the Bureau found that Defendants had violated multiple provisions of Federal consumer financial law, including the CFPA and the FDCPA. The Bureau agreed to resolve those findings without litigation through a consent order that required Defendants to abide by certain conduct provisions. Because Defendants have violated that order and, once again, the CFPA and the FDCPA, the Bureau files this Complaint.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

3. Venue is proper because Defendants are located, reside, or do business in this district. 12 U.S.C. § 5564(f).

## PARTIES

4. The Bureau is an independent agency of the United States created by the CFPA. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority and may

initiate civil actions in federal district court to secure appropriate relief for violations of "Federal consumer financial law," 12 U.S.C. § 5564(a)-(b), including the CFPA and the FDCPA, 12 U.S.C. § 12(H), (14); *see also* 15 U.S.C. § 1692l(b)(6).

5. Encore Capital Group, Inc. (Encore Capital) is a limited-liability company incorporated in Delaware. Its principal place of business is in San Diego, California. At all times relevant to this Complaint, Encore Capital has transacted business in this district.

6. Midland Funding, LLC (Midland) is a wholly owned subsidiary of Encore Capital with its principal place of business in San Diego, California. At all times relevant to this Complaint, Midland has transacted business in this district.

7. Midland Credit Management, Inc. (MCM) is a wholly owned subsidiary of Encore Capital with its principal place of business in San Diego, California. At all times relevant to this Complaint, MCM has transacted business in this district.

8. Midland and MCM operate in concert with one another and under the direct supervision and control of Encore Capital to purchase and collect consumer debt.

9. Asset Acceptance Capital Corp. (Asset) is a wholly owned subsidiary of Encore Capital with its principal place of business in San Diego, California. Asset operates under the direct supervision and control of Encore Capital to purchase and collect consumer debt. At all times relevant to this Complaint, Asset has transacted business in this district.

10. Together, Defendants (collectively, Encore) form the largest debt buyer and collector in the United States. Its annual revenue is more than $1 billion, and its annual net income is more than $75 million.

11. According to Encore Capital's 2018 10-K, it "primarily" purchases portfolios of defaulted debt and collects the debt from consumers. Midland, MCM, and Asset have no notable business purpose aside from purchasing and collecting consumer debt at Encore Capital's direction. Because each Defendant's "principal purpose" is the collection of consumer debt, each Defendant is a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6).

12. At all times relevant to this Complaint, Encore Capital, Midland, MCM, and Asset have collected debt related to consumer-financial products or services. Each Defendant is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6); *see also* 12 U.S.C. § 5481(5) & (15)(A)(x).

**FACTUAL BACKGROUND**

13. In 2015, the Bureau issued an administrative consent order with respect to Encore Capital, Midland, MCM, and Asset under the caption *Encore Capital Group, Inc.*, 2015-CFPB-0022 (Sept. 9, 2015) (the Order).

14. The Order resolved claims that Encore was making false or unsubstantiated representations to consumers about consumers owing debts; misrepresenting that Encore intended to prove debts if consumers contested them; filing affidavits that misled

consumers about the affiants' personal knowledge and the courts' presumption of the debts' validity; misrepresenting that Encore had legally enforceable claims to debts outside of the applicable statutes of limitations; misrepresenting to consumers that they had the burden of proof in litigation; making excessive and inconvenient phone calls; and failing to adequately investigate consumer-reporting disputes.

15. The Bureau found that these practices violated the CFPA, the FDCPA, and the Fair Credit Reporting Act.

16. The Order required Encore to pay at least $34 million in restitution to consumers and a $10 million civil penalty to the Bureau.

17. The Order also imposed conduct provisions that were primarily designed to protect consumers from efforts to collect inaccurate or unsubstantiated debts, particularly through litigation or threats of litigation. But Encore has not complied with those conduct provisions.

*Encore sued consumers without possessing required documentation.*

18. Paragraph 131(a) of the Order prohibits Encore from suing a consumer without possessing certain Original Account-Level Documentation (OALD), a term defined in ¶ 12 of the Order.

19. After ¶ 131's effective date, Encore filed at least hundreds of lawsuits without possessing OALD, as required by ¶ 131(a) of the Order.

*Encore engaged in Legal Collections without providing required disclosures.*

20. Paragraph 131(b) of the Order restricts Encore's use of Legal Collections, which the Order defines, in relevant part, as "any collection efforts made by any internal legal department or third-party law firm to collect a [d]ebt owed or allegedly owed to Encore."

21. Specifically, ¶ 131(b) prohibits Encore from engaging in Legal Collections without first providing the consumer with a "statement that Encore, or Encore's agent, will, within 30 days of a written request, provide the [c]onsumer with copies of [certain OALD] at no cost."

22. In more than 750,000 instances after ¶ 131's effective date, Encore engaged in Legal Collections after it had omitted material elements of this required disclosure.

23. Specifically, more than 750,000 disclosures omitted that the OALD would be provided at no cost.

24. More than 25,000 of the disclosures also omitted that the OALD would be provided within 30 days of a request.

25. Encore has collected more than $300 million through Legal Collections on these accounts without providing all material aspects of the disclosure required by ¶ 131(b) of the Order.

***Encore failed to provide OALD within 30 days of consumers' requests.***

26. Paragraph 131(b) of the Order states that "Encore has to provide [the above-referenced OALD] upon request."

27. In more than 250 instances since ¶ 131's effective date, Encore told consumers that it would respond to a request for OALD within 30 days of receiving a request, but Encore did not provide the OALD within 30 days of a request. In some instances, Encore filed lawsuits against consumers even though Encore had not provided the requested OALD.

28. Encore created a list of these consumers, as well as the dates of their requests and Encore's actions in response, which it provided to the Bureau on April 22, 2019, with the title "Supplemental Appendix I."

29. The failure to provide these consumers with the OALD that they had requested impeded the consumers' ability to determine whether their debts were truly owed. It was likely to affect the consumers' decision-making about whether and how to respond to allegedly outstanding debts.

***Encore sued consumers on Time-Barred debts.***

30. Paragraph 133(a) of the Order prohibits Encore from "collecting or attempting to collect any Time-Barred Debt through litigation or arbitration." The Order defines "Time-Barred Debt" as debt "that is beyond an applicable statute of limitations for a [d]ebt collection lawsuit."

31. After ¶ 133's effective date, Encore filed more than 100 lawsuits to collect consumer debts after the applicable statutes of limitations had expired.

32. Encore referred to these lawsuits in a declaration attached to a September 20, 2019 submission from its attorneys to the Bureau.

33. These lawsuits constitute representations to consumers, directly or indirectly, expressly or by implication, that the consumers had legally enforceable obligations to pay the debts.

34. The debts were beyond the applicable statutes of limitations, and so the consumers' obligations were not legally enforceable.

35. The representations that the obligations were legally enforceable were likely to affect consumers' choices or conduct regarding whether to pay the allegedly outstanding debts.

***Encore attempted to collect Time-Barred debts without giving required disclosures.***

36. Paragraph 133(b) of the Order requires that when Encore attempts to collect a Time-Barred debt, it must include the applicable version of one of the following statements:

> "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

or

"The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

37. After ¶ 133's effective date, Encore sent more than 425,000 letters to collect Time-Barred debts without including the disclosure required by ¶ 133(b) of the Order. At least 845 of these consumers made about $125,000 in payments to Encore before Encore gave them the required disclosure.

***Encore failed to disclose that consumers might incur international-transaction fees.***

38. Beginning in mid-2016, Encore began using a payment processor based in a foreign country to process consumers' debit-card and credit-card payments to Encore.

39. Because the payment processor is based in a foreign country, some consumers' banks charged international-transaction fees for these payments.

40. Although Encore knew that some consumers would incur these fees, for a period of about six months, Encore did not disclose to consumers that such a fee was possible.

41. Thousands of consumers incurred tens of thousands of dollars in these fees before Encore began disclosing that consumers may incur these fees.

42. Consumers have no control over how Encore processes payments and had no reason to believe that their payments to Encore—a domestic company—could result in international-transaction fees.

43. Encore accepted payment through alternative means, such as ACH transfer, which did not result in international-transaction fees.

44. Encore's failure to disclose to consumers that they might be charged international-transaction fees on credit-card and debit-card payments effectively denied consumers the opportunity to make informed choices about their preferred payment methods.

**COUNT I: VIOLATING THE CFPA BY VIOLATING THE ORDER**

45. The Bureau incorporates the allegations set forth in ¶¶ 1-44 of this Complaint.

46. Under § 1036(a)(1)(A) of the CFPA, it is unlawful for covered persons, such as Encore, to "commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

47. The Order is an "order prescribed by the Bureau" and is therefore part of "Federal consumer financial law." 12 U.S.C. § 5481(14).

48. Encore has violated the Order by:

   a. suing consumers without possessing OALD required by ¶ 131(a) of the Order;

   b. engaging in Legal Collections without first providing the disclosure required by ¶ 131(b) of the Order;

      c.    failing to provide OALD within 30 days of a consumer request, as required by ¶ 131(b) of the Order;

      d.    suing consumers on Time-Barred debts, in violation of ¶ 133(a) of the Order; and

      e.    collecting or attempting to collect Time-Barred debts without providing the disclosure required by ¶ 133(b) of the Order.

49. By violating the Order's requirements, Encore committed acts or omissions that violated "Federal consumer financial law." Accordingly, Encore violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## COUNT II: DECEPTIVE ACTS AND PRACTICES

50. The Bureau incorporates the allegations set forth in ¶¶ 1-44 of this Complaint.

51. Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as Encore, from engaging in deceptive acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. Information is material to consumers if it is likely to affect a consumer's conduct regarding the product or service. Express representations are presumptively material.

52. Encore's representations that it would provide OALD were deceptive.

  a. As described in ¶¶ 26-29 of this Complaint, in more than 250 instances, Encore expressly represented to consumers that if consumers requested certain OALD within 30 days, Encore would provide it.

  b. These representations were what Encore intended to convey, and it was reasonable under the circumstances for consumers to interpret the representations literally.

  c. These representations misled or were likely to mislead consumers because they were untrue—Encore did not provide the OALD within 30 days of the consumers' requests.

  d. These representations were presumptively material because they were express. They were also material because they were likely to affect consumers' behavior: Encore's failure to provide OALD within the time that it said it would was likely to or did impede consumers' ability to assess Encore's claims that the debts were properly owed. This was likely to affect how consumers responded to Encore's collection attempts.

53. Encore's lawsuits on Time-Barred debts were deceptive.

  a. As described in ¶¶ 30-35 of this Complaint, Encore sued more than 100 consumers on Time-Barred debts.

  b. These lawsuits represented implicitly or explicitly, directly or by implication, that consumers had legally enforceable obligations to pay these debts.

  c. These representations were material because they were likely to affect consumers' choices about whether and how to respond to the allegedly outstanding debts. A consumer, especially one with limited resources, is more likely to pay an obligation that is legally enforceable than one that is not because the consequences of failing to repay the former are more severe than for the latter.

  d. These representations were likely to mislead consumers because they were untrue; as these debts had passed the applicable statutes of limitations, the consumers did not have legally enforceable obligations to pay these debts.

54. Encore therefore engaged in deceptive acts or practices that violated §§ 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a); 5536(a)(1)(B).

## COUNT III: VIOLATIONS OF THE FDCPA

55. The Bureau incorporates the allegations set forth in ¶¶ 1-44 of this Complaint.

56. Section 807 of the FDCPA prohibits debt collectors, such as Encore, from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Specifically, § 807(2)(A) prohibits false representations of the legal status of a debt, § 807(5) prohibits threats to take action that cannot legally be taken or that is not intended to be taken, and § 807(10) prohibits false representations or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(2)(A), (5), (10).

57. Encore's representations that it would provide OALD were false or misleading, in violation of § 807 and 807(10) of the FDCPA.

    a. As described in ¶¶ 26-29 of this Complaint, in more than 250 instances, Encore expressly represented to consumers that if consumers requested certain OALD within 30 days, Encore would provide it.

    b. These express representations were made in letters or phone calls in which Encore attempted to collect debt and were therefore "in connection with the collection of any debt" within the meaning of the FDCPA. 15 U.S.C. § 1692e.

    c. These representations were false or misleading because they were untrue—Encore did not provide the OALD within 30 days of the consumers' requests.

58. Encore's lawsuits on Time-Barred debts were false or misleading under § 807, 807(2)(A), 807(5), and 807(10) of the FDCPA.

    a. As described in ¶¶ 30-35 of this Complaint, Encore sued more than 100 consumers on Time-Barred debts.

    b. Because the lawsuits were intended to collect debt, they were "in connection with the collection of any debt" within the meaning of the FDCPA. 15 U.S.C. § 1692e.

c. The reasonable interpretation of these lawsuits, implicitly or explicitly, directly or by implication, was that consumers had legally enforceable obligations to pay these debts.

d. These representations were false or misleading because they were untrue; as these debts had passed the applicable statutes of limitations, the consumers did not have legally enforceable obligations to pay these debts.

e. Whether a debt is legally enforceable concerns the character or legal status of a debt.

59. Encore therefore used false, misleading, or deceptive representations or means in connection with the collection of debts, in violation of § 807, 807(2)(A), 807(5), and 807(10) of the FDCPA. 15 U.S.C. § 1692e, 1692e(2)(A), (5), (10).

**COUNT IV: VIOLATING THE CFPA BY VIOLATING THE FDCPA**

60. The Bureau incorporates the allegations set forth in ¶¶ 1-44 of this Complaint.

61. Section 1036(a)(1)(A) of the CFPA makes it unlawful for covered persons, such as Encore, to "commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

62. The FDCPA is a "Federal consumer financial law." 12 U.S.C. § 5481(12)(H), (14).

63. Under § 814(c) of the FDCPA, any violation of the FDCPA is deemed to be a violation of the CFPA. 15 U.S.C. § 1692l(c).

64. By violating the FDCPA as described in Count III, Encore violated the CFPA. 12 U.S.C. § 5536(a)(1)(A); 15 U.S.C. § 1692l(c).

### COUNT V: UNFAIR ACTS AND PRACTICES

65. The Bureau incorporates the allegations set forth in ¶¶ 1-44 of this Complaint.

66. Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as Encore, from engaging in unfair acts or practices. 12 U.S.C. § 5536(a)(1)(B). Under § 1031(c)(1), an act or practice is unfair if it causes or is likely to cause a substantial injury that is not reasonably avoidable by consumers and that does not provide countervailing benefits to consumers or competition. 12 U.S.C. § 5531(c)(1).

67. Encore's conduct surrounding its payment processing described in this Complaint caused or was likely to cause substantial injury by effectively denying consumers the opportunity to make informed choices of their preferred payment methods.

68. The injury was not reasonably avoidable because Encore did not disclose the possibility of the fees, consumers had no control over how Encore processed their payments, and consumers had no reason to believe that their payments to Encore—a domestic company—could result in international-transaction fees.

69. Encore's conduct was not outweighed by countervailing benefits to consumers or to competition.

70. Encore therefore committed unfair acts or practices that violated §§ 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

### DEMAND FOR RELIEF

Accordingly, the Bureau requests that the Court:

1. permanently enjoin Defendants from committing future violations of the CFPA, the FDCPA, or any provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);

2. grant additional injunctive relief as the Court deems just and proper;

3. award damages or other monetary relief against Defendants;

4. order Defendants to pay redress to consumers harmed by Defendants' unlawful conduct;

5. order the disgorgement of Defendants' ill-gotten gains;

6. impose on Defendants civil money penalties under 12 U.S.C. § 5565(c);

7. order Defendants to pay the Bureau's costs incurred in connection with prosecuting this action; and

8. award additional relief as this Court deems just and proper.

\\
\\
\\

          Respectfully submitted,

Cara Petersen
*Principal Deputy Enforcement Director*
Jeffrey Paul Ehrlich
*Deputy Enforcement Director*
Kara K. Miller
*Assistant Litigation Deputy*

 s/ Zach Mason
Zach Mason (CA Bar # 329643)
*Enforcement Attorney*

Bureau of Consumer Financial Protection
Email: zach.mason@cfpb.gov
Tel.: 212-328-7013
Fax: 202-435-7329
1700 G Street, NW
Washington, DC 20552